No. 00-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 127

MARIAS HEALTHCARE SERVICES, INC.,

Plaintiff, Respondent,

and Cross-Appellant,

v.

DR. ANNETTE YVETTE MARIE TURENNE,

Defendant, Counter claimant and Appellant.

APPEAL FROM: District Court of the Ninth Judicial District,

In and for the County of Toole,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Frederick F. Sherwood, Reynolds, Motl and Sherwood, P.L.L.P., Helena, MT

For Respondent:

Peter O. Maltese, Attorney at Law, Sidney, MT

Submitted on Briefs: December 7, 2000
Decided: July 24, 2001

Filed:

_____

Clerk


Justice Jim Regnier delivered the Opinion of the Court.

¶1 After a bench trial, the Ninth Judicial District Court, Toole County, dismissed both the claim by Marias Healthcare Services, Inc., and the counterclaim by Dr. Annette Yvette Marie Turenne and denied attorneys fees and costs to both parties. Dr. Turenne appeals, and Marias Healthcare cross-appeals. The appellant, Dr. Turenne, raises several issues, which we restate as follows:

> 1. Did the District Court err in determining that Dr. Turenne's claim for wages and penalties was not timely filed?

> 2. Did the District Court properly determine that Dr. Turenne failed to provide proof that Marias Healthcare did not fully compensate her pursuant to the employment contract?

> 3. Did the District Court err in determining that Dr. Turenne was properly suspended without pay pursuant to the employment contract?

> 4. Did the District Court err in determining that Marias Healthcare properly deducted the cost of an educational workshop and supplies from Dr. Turenne's compensation?

> 5. Did the District Court err in determining that Dr. Turenne was not entitled to damages for the cost of replacement medical malpractice insurance coverage?

Both Dr. Turenne and cross-appellant Marias Healthcare appeal the denial of attorney fees. We affirm.

## BACKGROUND

¶2 On October 14, 1998, Marias Healthcare Services, Inc., a health care facility in Havre, Montana, brought an action against Dr. Annette Yvette Marie Turenne for breach of a

written employment contract. Marias Healthcare alleged that Dr. Turenne refused to endorse State warrants made payable to her for Medicaid Services while she was an employee of Marias Healthcare. Dr. Turenne counterclaimed for compensation still due under her employment contract, damages for early termination of her medical malpractice insurance, and for penalties and attorneys fees pursuant to relevant wage statutes. Both parties claimed attorneys fees pursuant to breach of the employment contract.

¶3 On October 8, 1999, Dr. Turenne moved for summary judgment, which was subsequently denied by the District Court except for a finding that Marias Healthcare was liable for the early termination of the doctor's malpractice insurance coverage. Marias moved for reconsideration of the motion for summary judgment relating to the medical malpractice insurance coverage issue. The District Court subsequently vacated the summary judgment order relating to malpractice insurance coverage and a bench trial was held on January 18 and 19, 2000.

¶4 On March 2, 2000, the District Court issued its Findings of Fact and Conclusions of Law dismissing Marias Healthcare's claim and dismissing Dr. Turenne's counterclaims. In its Findings of Fact and Conclusions of Law, the District Court concluded Dr. Turenne's wage claims were time barred but proceeded to address the merits of her claims. The District Court further ruled that neither party was entitled to attorneys fees or costs. The decision was appealed by Dr. Turenne and cross-appealed by Marias Healthcare.

## STANDARD OF REVIEW

¶5 We review a district court's findings of fact to determine whether they are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906. We review a district court's conclusions of law to determine whether its interpretation is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## ISSUE ONE

¶6 Did the District Court err in determining that Dr. Turenne's claim for wages was not timely filed?

¶7 On October 30, 1997, Marias Healthcare paid Dr. Turenne's salary based on the previous year's salary, failing to take into account the annual cost of living increase. Upon

notice of the error, Marias Healthcare reimbursed Dr. Turenne. Dr. Turenne also claims that Marias Healthcare improperly suspended her without pay beginning on October 27, 1997. Dr. Turenne filed wage claims relating to the late pay and suspension pursuant to § 39-3-201, MCA, and § 39-3-206, MCA, against Marias Healthcare on April 30, 1999, as a counterclaim against Marias Healthcare's claim against her for failing to sign outstanding warrants.

¶8 Marias Healthcare contends that Dr. Turenne is time barred from raising this claim pursuant to the statute of limitations set forth in § 39-3-207, MCA, which provides that an employee may recover all wages and penalties by filing a complaint within 180 days of a default or delay in the payment of wages. Dr. Turenne argues that Marias Healthcare may not raise a statute of limitations defense because such a defense is an affirmative defense that must have been raised in the original pleadings, and Marias Healthcare first raised the issue in its post trial memorandum. We agree.

¶9 A statute of limitations defense is an affirmative defense that is waived if it is not raised in the answer to a claim. *See* Rule 8(c), M.R.Civ. P. *See also Estabrook v. Baden* (1997), 284 Mont. 419, 423, 943 P.2d 1334, 1336. Marias Healthcare failed to raise the issue in its original pleadings and is thus barred from raising the defense. Additionally, Marias Healthcare failed to respond to the issue when it was presented to this Court. Thus, we conclude that the District Court erred in determining that Dr. Turenne's wage claims were time barred. In turn, we shall address the merits of her claims.

## ISSUE TWO

¶10 Did the District Court properly determine that Dr. Turenne failed to prove that Marias Healthcare did not fully compensate her pursuant to the employment agreement?

¶11 Dr. Turenne argues that she provided sufficient proof that Marias Healthcare failed to pay her an appropriate salary as required by § 39-3-204, MCA, by miscalculating her monthly income for October 1997 and failing to include a cost of living increase to her base salary. Dr. Turenne claims that she is entitled to damages for such an underpayment pursuant to § 39-3-204, MCA. She also argues that pursuant to § 39-3-206, MCA, a penalty must also be assessed against and paid by Marias Healthcare in an amount not to exceed 110% of the wages due and unpaid.

¶12 Marias Healthcare responds that although they miscalculated Dr. Turenne's monthly

paycheck in October 1997, Dr. Turenne failed to provide adequate proof that she was not paid her full compensation package as required by the employment contract because Marias Healthcare, upon discovery of the error, fully reimbursed Dr. Turenne in the subsequent paychecks. Marias Healthcare also argues that Dr. Turenne is excluded from a wage claim pursuant to § 39-3-204(3), MCA, which excludes any professional, supervisory, or technical employee who by custom receives wages earned at least once monthly. The District Court concluded that Dr. Turenne was to receive an annual "total compensation package," and that after considering various deduction packages, Dr. Turenne failed to prove that she was underpaid by Marias Healthcare.

¶13 Although payment stubs representing a portion of Dr. Turenne's monthly compensation were entered into the record, the evidence is incomplete to determine whether Dr. Turenne was underpaid in terms of her total compensation package for October 1997. The compensation provision of the employment agreement was intentionally flexible for tax purposes, designed to benefit the employee physicians by withholding certain claims from physician paychecks. No evidence was presented by Dr. Turenne as to the appropriate or required monthly level of compensation, accounting for social security, workers compensation or other withholding, or the favorable tax benefits employed by Dr. Turenne, which would adequately demonstrate whether or not Marias Healthcare had provided inadequate compensation. *See* § 26-1-401, MCA.

¶14 Thus, based on the evidence presented, we conclude that the District Court did not err in determining that Dr. Turenne failed to produce sufficient evidence. We need not reach the question as to whether Dr. Turenne's claim was excluded under § 39-3-204(3), MCA.

## ISSUE THREE

¶15 Did the District Court err in determining that Dr. Turenne was properly suspended without pay pursuant to the employment contract?

¶16 Dr. Turenne argues that Marias Healthcare improperly suspended her. She argues that pursuant to the employment contract, she cannot be suspended without pay except under specific circumstances such as limitation or suspension of her license or hospital privileges or the termination of the employment contract and that her suspension was not based on these circumstances. Marias Healthcare argues that the employment contract incorporates other Marias Healthcare policies and procedures which allowed for her suspension without pay. We agree.

¶17 In the case at hand, Marias Healthcare and Dr. Turenne signed and executed a valid employment contract that contained specific references to Marias Healthcare policies and provisions. Thus, because the employment contract was adequately bargained for, sufficient consideration was present, and both parties were on notice of the terms of the contract, the inclusion of the referenced policies and procedures is valid. *See, e.g., Langager v. Crazy Creek Products, Inc.,* 1998 MT 44, ¶¶ 20-21, 287 Mont. 445, ¶¶ 20-21, 954 P.2d 1169, ¶ ¶ 20-21 (holding that the employer was bound by the terms of the employment manual when it was given to the employee and specifically referenced during her employment).

¶18 Specifically, the employment contract at issue states in Article XII, paragraph E, that Dr. Turenne shall follow the policies and procedures promulgated by Marias Healthcare. Such a direct reference to the policies and procedures clearly incorporates the policies and procedures of Marias Healthcare into the employment contract. The policies and procedures of the employment manual were sufficiently referenced in the employment contract entered into between Marias Healthcare and Turenne as to hold both parties to those policies and procedures. *See Flanigan v. Prudential Fed. Sav. & Loan Ass'n.* (1986), 221 Mont. 419, 428-29, 720 P.2d 257, 263 (holding that an employer may be liable for negligence in violating its written employment policies). In addition, the policies and procedures utilized by Marias Healthcare comprise a 68 page manual which Dr. Turenne utilized and provided suggestions relating to modifications for favorable employee benefits during her tenure.

¶19 Dr. Turenne argues that the disciplinary action by Marias Healthcare is prohibited by her employment contract. We disagree. The employment contract specifically referenced the policies and procedures of Marias Healthcare. The employment contract also stated that if such policies were inconsistent with the employment contract, the "employment agreement shall overrule [Marias Healthcare] Policies if there is [sic] any inconsistencies." In this case, the disciplinary procedure as cited in the policies and procedures and used by Marias Healthcare to suspend Dr. Turenne was not inconsistent with the employment contract signed by Dr. Turenne. There was no conflict between the policies of Marias Healthcare and the terms of the contract. No language in the employment contract barred Marias Healthcare from implementing its policies and procedures - in fact, the contract clearly stated that Dr. Turenne "shall follow the Policies & Procedures promulgated by [Marias Healthcare]."

¶20 Had the employment contract been inconsistent with the policies and procedures, the

employment agreement, by its terms, would take precedence. Because Dr. Turenne does not claim that Marias Healthcare improperly suspended her pursuant to the requirements of the policies and procedures and her suspension without pay does not violate the express terms of the employment contract, we conclude that the District Court did not err in determining that Dr. Turenne was properly suspended without pay.

¶21 Dr. Turenne also argues that she is entitled to her wages for the time that she was suspended because she continued to see patients and Marias Healthcare was reimbursed by the State for those patient visits. Marias Healthcare argues that they specifically informed Dr. Turenne that she was to refer all patients to other physicians during that time period, and that they had no knowledge of Dr. Turenne seeing patients. The District Court concluded that no evidence was presented to calculate the numbers of hours that Dr. Turenne may have worked during that period, and thus no calculation of the value of those hours could be made. We agree.

## ISSUE FOUR

¶22 Did the District Court err in determining that Marias Healthcare properly deducted the cost of an educational workshop and supplies from Dr. Turenne's compensation?

¶23 Dr. Turenne attended a workshop on the chemical peel process in October 1997. As was customary policy, Dr. Turenne charged several hundred dollars on her personal credit card for travel and lodging relating to the workshop and requested that Marias Healthcare withhold the amount from her wages, creating a tax advantage for Dr. Turenne. Marias Healthcare paid a total of $200 for the workshop and supplies. Marias Healthcare subsequently deducted the $200 from Dr. Turenne's paycheck. Dr. Turenne submits that Marias Healthcare improperly deducted the cost of the workshop and supplies from her compensation.

¶24 Dr. Turenne testified that it was her understanding that Marias Healthcare, through prior approval from both Jerome Morasko and Kim Zink, employees of the clinic, would cover the cost for her educational workshop and supplies relating to the chemical peel workshop. Marias Healthcare contends that Morasko told Dr. Turenne that he would present her request of coverage of the educational workshop and supplies to the Board of Directors who had the power to approve additional expenses. Morasko further testified that the Board of Directors did not approve covering the cost of the seminar, as reflected in the Board minutes. Thus, Marias Healthcare contends that they properly deducted the

amount of the seminar from Dr. Turenne's compensation.

¶25 As noted above, conflicting testimony was presented to the District Court relating to this issue. We have consistently stated that a district court is in a better position to observe witnesses and judge their credibility than this Court. We will not second guess a district court's determination regarding the strength and weight of conflicting testimony nor substitute our judgment for that of the trial court when the issue relates to the credibility of the witness or the weight given to certain evidence. *See Wareing v. Shreckendgust* (1996), 280 Mont. 196, 210, 930 P.2d 37, 45-46. Thus, we will not overturn the ruling of the District Court in determining that Marias Healthcare properly deducted the cost of the educational workshop and supplies from Dr. Turenne's compensation.

## ISSUE FIVE

¶26 Did the District Court err in determining that Dr. Turenne was not entitled to damages for the cost of replacement medical malpractice insurance?

¶27 Dr. Turenne argues that she is entitled to damages for the cost of replacement medical malpractice insurance because it reasonably appeared that Marias Healthcare fully terminated her medical malpractice insurance, leaving her without tail coverage, at the time of her suspension. Tail coverage is the portion of the medical malpractice insurance policy that would cover any potential claims made in the future against Dr. Turenne relating to her practice while working for Marias Healthcare. Marias Healthcare contends that it properly provided Dr. Turenne with tail coverage which would adequately insure her for claims made by patients seen while she was employed by Marias Healthcare and thus, should not be liable for the cost of Dr. Turenne's tail coverage.

¶28 Sometime after she was suspended, Dr. Turenne was informed that Marias Healthcare had removed her from the medical malpractice insurance that covered clinic doctors. She was not informed that she was still covered under the policy for tail coverage. Subsequently, Dr. Turenne purchased medical malpractice insurance which included tail coverage insurance through the end of her employment contract with Marias Healthcare. Dr. Turenne contends that Marias Healthcare should be liable for that cost.

¶29 We conclude that Dr. Turenne failed to prove the amount of her damages. The initial burden of producing evidence as to the cost of replacement tail insurance is on Dr. Turenne. *See* § 26-1-401, MCA. Evidence presented indicated that the cost of Dr.

Turenne's new medical malpractice insurance did not include a specific amount designated for the tail coverage from her previous employment with Marias Healthcare. Marvin Jeppesen, the insurance agent for both Marias Healthcare and Dr. Turenne, testified that the tail coverage provided in Dr. Turenne's subsequent insurance policy was only a minimal amount of the entire insurance policy. He could not testify as to the exact cost of such coverage. We conclude that Dr. Turenne failed to produce evidence establishing that she incurred damages when she believed that she was without tail coverage. Thus, the District Court did not err in determining that Dr. Turenne was not entitled to damages for tail coverage.

¶30 Both plaintiff and defendant argue that they should be awarded attorney fees pursuant to the employment contract. The defendant further alleges that she is entitled to attorney fees pursuant to § 39-3-214, MCA. The District Court concluded that neither party was to be considered a successful party in the litigation, and thus denied attorneys fees to both parties.

¶31 The employment contract between Dr. Turenne and Marias Healthcare designated that a prevailing party in an action should be awarded attorney fees. The District Court specifically held that, in this case, neither party shall be considered the prevailing party because neither party was wholly successful. *See Nyquist v. Nyquist* (1992), 255 Mont. 149, 156, 841 P.2d 515, 520. We conclude that the District Court did not err in exercising discretion in that determination.

¶32 Additionally, we conclude that the District Court did not err in determining that Dr. Turenne was not entitled to attorneys fees pursuant to § 39-3-214, MCA, which mandates attorney fees to be awarded to a successful wage claimant. *See Glaspey v. Workman* (1988), 234 Mont. 374, 377, 763 P.2d 666, 668; *cited with approval in Stimac v. State* (1991), 248 Mont. 412, 416-417, 812 P.2d 1246, 1248. Dr. Turenne was not successful in her wage claim.

¶33 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER