**FILED**

February 5 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 12-0266

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 25

JUDY D. OLSEN,

       Plaintiff and Appellee,

  v.

KRISTY K. JOHNSTON
and DAVE JOHNSTON,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and For the County of Meagher, Cause No. DV 09-16
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Robert J. Quinn, Quinn Law Office, Bozeman, Montana

       For Appellee:

           John R. Christensen, Ben T. Sather, Christensen Fulton & Filz, PLLC,
Billings, Montana

Submitted on Briefs:  November 7, 2012
Decided:  February 5, 2013

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellants Kristy K. Johnston (Johnston) and Dave Johnston (Dave) appeal from an order of the Fourteenth Judicial District Court, Meagher County, that granted summary judgment to Appellee Judy D. Olsen (Olsen). The District Court determined that Olsen and Johnston had contracted for Olsen to purchase Johnston's interest in real property that they jointly owned as tenants in common. The court awarded specific performance to Olsen under the contract. We affirm.

¶2 We address on appeal only whether the District Court properly concluded that Olsen and Johnston had formed an enforceable contract.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Olsen and Johnston are sisters. Olsen, Johnston, and their mother, Joyce Johnston (Joyce), owned as tenants in common 78 acres of real property on Eagle Creek in Meagher County (the property). Joyce left her one-third interest in the property to Johnston when she died in 2008.

¶4 Johnston sent a letter to Olsen on July 17, 2009, in which she offered either to buy Olsen's interest in the property, or to sell her own interest to Olsen. In relevant part, the letter read:

Judy,

As tenants in common with irreconcilable differences, I feel a termination of joint ownership of the cabin property is unavoidable.

I propose that you sell me your 1/3 share of the 78 acre Eagle Creek property for $150,000.00. If you choose not to sell, you may purchase my 2/3 share for

2

$300,000.00.

. . .

Please respond to Bruce Townsend by August 15, 2009 or I will be forced to seek partitioning of the property.

Johnston sent copies of the letter to Bruce Townsend (Townsend), and to her attorney, Shane Reely (Reely).

¶5 Olsen did not respond to Townsend as Johnston had requested. Olsen instead sent the following response letter directly to Johnston on July 24, 2009:

Kristy,

In your letter to me of July 17, 2009 regarding the ownership of the 78 acre cabin property on Eagle Creek, you offered to sell your 2/3 interest to me for $300,000.

I accept your offer to sell and will purchase your interest for $300,000. You may consider this letter as my confirmation of acceptance of your offer to sell. . . .

Johnston sent a letter to Olsen on July 28, 2009, in which she acknowledged that she had received Olsen's response. Johnston attempted to reject Olsen's acceptance and revoke her own offer to sell. Johnston informed Olsen that she already had agreed to sell her interest in the property to their brother, Dave. Johnston told Olsen that she had made the same offer to sell her interest in the property to Dave, and that he had accepted her offer by telephone before she had received Olsen's letter.

¶6 Olsen enlisted the assistance of counsel after she received Johnston's second letter. Olsen's counsel, John Christensen (Christensen), sent a letter to Johnston and to Reely on August 17, 2009, in which he asserted that Olsen and Johnston had created a binding

3

contract. Christensen made it clear that Olsen was prepared to seek judicial enforcement of the contract, if necessary.

¶7 After Christensen's letter, the parties and their counsel seemed to be working towards closing the sale. Reely informed Christensen on September 21, 2009, however, that Johnston had hired Dave's attorney to handle the matter and that Johnston was refusing to honor the contract. Olsen filed her complaint later that day.

¶8 Olsen filed a summary judgment motion on July 15, 2010. The court granted Olsen's motion on March 19, 2012. The court determined that the letters exchanged between Olsen and Johnston had created an enforceable contract that satisfies the statute of frauds. The court awarded Olsen specific performance of the contract. Johnston appeals.

## STANDARD OF REVIEW

¶9 We review de novo a district court's grant of summary judgment. *Kaufman Brothers v. Home Value Stores, Inc.*, 2012 MT 121, ¶ 6, 365 Mont. 196, 279 P.3d 157. The party moving for summary judgment must establish that no genuine issue exists as to any material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c). The burden then shifts to the non-moving party to present substantial evidence that raises a genuine issue of material fact. *Bruner v. Yellowstone Co.*, 272 Mont. 261, 264, 900 P.2d 901, 903 (1995).

## DISCUSSION

4

¶10 Johnston argues that her offer required Olsen to reply to Townsend. Johnston contends that Olsen rejected the terms of her offer when she replied directly to Johnston. Johnston argues that Olsen instead presented a counteroffer when Olsen replied directly to Johnston. Johnston denies having accepted Olsen's counteroffer. Thus she contends that the parties formed no enforceable contract.

¶11 To form a legally enforceable contract, there must be (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. Section 28-2-102, MCA. The parties' consent must be free, mutual, and communicated by each to the other. Section 28-2-301, MCA. Consent is not determined by the subjective, undisclosed intent of the parties. *Miller v. Walter*, 165 Mont. 221, 226, 527 P.2d 240, 243 (1974). We determine consent by the parties' outward, objective manifestations. *Bitterroot Int'l Sys. v. W. Star Trucks, Inc.*, 2007 MT 48, ¶ 33, 336 Mont. 145, 153 P.3d 627; *Miller*, 165 Mont. at 226, 527 P.2d at 243. Parties have consented if, based on their words and conduct, a reasonable person would conclude that they intended to be bound by the contract. *Bitterroot Int'l Sys.*, ¶ 33.

¶12 Parties usually give mutual consent in the form of an offer and an acceptance. *Bitterroot Int'l Sys.*, ¶ 33. "'An offer is a promise; it is a statement made by the offeror of what he will give in return for some promise or act of the offeree.'" *City of Bozeman v. Taylen*, 2007 MT 256, ¶ 19, 339 Mont. 274, 170 P.3d 939 (quoting *Sunburst Oil & Gas Co. v. Neville*, 79 Mont. 550, 563, 257 P. 1016, 1019 (1927)).

5

¶13 Acceptance communicated to the offeror completes mutual consent. An offeree generally can communicate her acceptance to the offeror in any reasonable and usual manner. Section 28-2-512(2), MCA. As master of the offer, however, the offeror may limit the time, place, or manner in which an offeree can accept. Section 28-2-501(2), MCA; *see also*, *Miller*, 165 Mont. at 227, 527 P.2d at 244; *Steinbrenner v. Minot Auto Co.*, 56 Mont. 27, 180 P. 729 (1919).

¶14 If the offer so limits the mode of acceptance, the offeree must comply with those terms as a condition precedent to acceptance. Section 28-2-501(2), MCA. Noncompliance with such a condition constitutes a rejection of the offer. *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 23, 362 Mont. 264, 264 P.3d 709. An offeree's non-complying response should be characterized as a counteroffer. *AAA Constr. of Missoula, LLC*, ¶ 23. An offer also may suggest a time, place, or manner of acceptance that would be satisfactory to the offeror. *See Restatement (Second) of Contracts* § 60 (1981). Other reasonable modes of acceptance are not precluded if the offer merely suggests a time, place, or manner of acceptance. *Restatement (Second) of Contracts* § 60.

¶15 In other words, an offeror that prescribes an exclusive mode of acceptance does not consent to be bound by the contract unless the offeree communicates acceptance in that particular manner. Section 28-2-501(2), MCA. An offeror who merely suggests one satisfactory manner of acceptance, however, consents to be bound by the offer as long as the offeree communicates acceptance in any reasonable manner. *Restatement (Second) of Contracts* § 60.

6

¶16    We consider only the offeror's objective manifestations of consent as expressed by words and conduct. *Bitterroot Int'l Sys.*, ¶ 33.   An offer must exclude clearly and definitively all other modes of acceptance to create a condition precedent to acceptance. *Restatement (Second) of Contracts* § 60 illus. 1-5; Samuel Williston, *Williston on Contracts* vol. 2, § 6:12, 130 (Richard A. Lord ed., 4th ed., West 2007); *see also, David J. Tierney, Jr., Inc. v. T. Welington Carpets, Inc.*, 8 Mass. App. Ct. 237, 240-41, 392 N.E.2d 1066, 1069 (1979); *Overman v. Brown*, 220 Neb. 788, 791, 372 N.W.2d 102, 105 (1985); *Panhandle E. Pipe Line Co. v. Smith*, 637 P.2d 1020, 1022 (Wyo. 1981).

¶17    The District Court correctly determined that Johnston's offer did not limit Olsen's potential modes of acceptance.  First, and most importantly, Johnston's offer did not use words of limitation when she requested that Olsen reply to Townsend.  Johnston could have used language like "You *must* reply to Bruce Townsend to accept this offer," or "You can accept this offer, *if at all*, by responding to Bruce Townsend." Such language would have made clear that Olsen could accept the offer only by replying to Townsend.  The District Court also noted that the offer did not include Townsend's address or contact information.  According to the District Court, the offer's failure to include Townsend's contact information coupled with Johnston's failure to use words of limitation likely would lead a reasonable person to believe that any reasonable manner of acceptance would be satisfactory.

¶18    Johnston's conduct also did not make clear that the offer had prescribed an exclusive mode of acceptance.  Johnston personally sent the letter that contained her offer to Olsen.

7

Johnston did not have Townsend send the letter on her behalf. Johnston failed to convey objectively an unwillingness to communicate directly with Olsen.

¶19    Johnston did not make clear through her words and associated conduct that a reply to Townsend represented the exclusive permissible mode of acceptance. Johnston consequently did not create a condition precedent to Olsen's acceptance. The parties' mutual consent was completed therefore when Olsen accepted Johnston's offer in a reasonable manner. The offer and acceptance satisfied the three other essential elements of a contract. The parties had capacity to contract, § 28-2-201, MCA; the agreement had a lawful object—the sale of the property, § 28-2-601 to -602, MCA; and the agreement called for the exchange of sufficient consideration, § 28-2-801, MCA.

¶20    Moreover, the parties' exchanged letters satisfied the statute of frauds. A contract for the sale of real property must be memorialized by a written note or memorandum subscribed by the party to be charged. Section 28-2-903, MCA. The note or memorandum does not have to be in any particular form and may consist of several writings. *Johnson v. Ogle*, 120 Mont. 176, 181-82, 181 P.2d 789, 791 (1947); *Hughes v. Melby*, 135 Mont. 415, 421, 340 P.2d 511, 515 (1958). The note or memorandum need not contain the entire contract. *Kluver v. PPL Mont., LLC.*, 2012 MT 321, ¶ 38, 368 Mont. 101, ___P.3d___; *Dineen v. Sullivan*, 123 Mont. 195, 199, 213 P.2d 241, 243 (1949). The note or memorandum must include all of the material terms of the contract, but those terms may be stated generally. *Kluver*, ¶ 38; *Dineen*, 123 Mont. at 199, 213 P.2d at 243; *Hughes*, 135 Mont. at 421, 340 P.2d 511.

¶21 The parties' agreement establishes the material terms of the contract. *Dineen*, 123 Mont. at 202, 213 P.2d at 244-45. The material terms of a contract for the sale of real property will include the parties, the subject matter, a reasonably certain description of the property affected, the purchase price or the criteria for determining the purchase price, and some indication of mutual assent. Williston, *Williston on Contracts* at vol. 2, § 29:8, 616-618. Subsidiary matters, collateral matters, or matters that go to the performance of the contract, do not constitute material terms. *Kluver*, ¶ 38; *Steen v. Rustad*, 132 Mont. 96, 106, 313 P.2d 1014, 1020 (1957); *Keaster v. Bozik,* 191 Mont. 293, 302, 623 P.2d 1376, 1381 (1981).

¶22 The parties' exchanged letters identified Johnston as the seller of certain real property and Olsen as the buyer. Johnston's offer identified the property as the 78 acre Eagle Creek property that she and Olsen owned as tenants in common. Johnston agreed to transfer her two-thirds interest in the property to Olsen. Olsen agreed in return to pay $300,000 to Johnston. Johnston signed the offer letter. The exchanged letters thus included all of the essential material terms of the contract and satisfied the statute of frauds. Section 28-2-102, MCA. All other terms represent collateral matters that relate to the parties' performance of the agreed upon material terms. The District Court properly concluded that the parties' exchange of letters created an enforceable contract.

¶23 Affirmed.

/S/ Brian Morris

We Concur:

/S/ Mike McGrath
/S/ Michael E Wheat
/S/ Patricia Cotter
/S/ Beth Baker